BR

**FILED**

NO. ⁊:11-CR-11b-1

SEP **1 6** 2011

DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY___KM___ DEP CLK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL INFORMATION |
| | ) | Fed. R. Crim. P. 7 |
| STEVEN M. HARDWICK | ) | |
| | ) | |

THE UNITED STATES ATTORNEY CHARGES:

## COUNT ONE

### INTRODUCTORY STATEMENT

1. STEVEN M. HARDWICK, defendant herein, along with others, worked together to defraud crop insurance companies of funds by filing false loss claims, to defraud the United States of America through the filing of false insurance claims ultimately reimbursed by the United States Department of Agriculture, to make material false statements in connection with the federal crop disaster program and to the Farm Service Agency, and to launder the proceeds and profits of the underlying fraud.

### STATUTORY AND REGULATORY BACKGROUND

2. In 1938, Congress passed the Federal Crop Insurance Act (hereinafter referred to as the "Act"), 7 U.S.C. § 1501 et seq., in order to promote the economic stability of agriculture in the United States through, in part, a system of crop insurance.

3.    In furtherance of this purpose, Congress established the Federal Crop Insurance Corporation (hereinafter referred to as "FCIC"), 7 U.S.C. § 1503, which was authorized to insure crop losses due to drought, flood, or other natural disaster, as determined by the Secretary of United States Department of Agriculture (hereinafter referred to as "USDA"), 7 U.S.C. § 1508. Tobacco, corn, soybeans, and wheat were among the crops for which insurance was authorized under the Act.    7 U.S.C. § 1518.

4.    The Act only authorized the extension of insurance coverage to producers, that is, a person or entity with an insurable interest in a crop as either an owner-operator, landlord, tenant, or sharecropper.    7 U.S.C. § 1520.    Farmers are producers. A crop insurance policy under the Act provided payments to a farmer when bad weather (freeze, drought, etc.) or other such unavoidable events caused the harvest for the farm to be less than the amount specified in the insurance contract, or written policy agreement. The insurance contract or written policy agreement, and premiums of coverage, are based on four or more years of production records for a particular crop grown by a farmer on a specific farm designated by its unique Farm Serial Number ("FSN").

5.    By delegated authority, the Secretary of USDA issued regulations governing the federal crop insurance program. 7 C.F.R. § 400 et seq.

2

6. Since 2004, farmers have been required to take out insurance policies prior to the growing season. Farmers generally do not pay their policy premiums until the growing season has ended and when the farmer knows whether or not his yield (i.e., the amount of crop harvested from a specific farm) justified an insurance claim. If the farmer makes a claim under his crop insurance policy, then the insurance premium is typically deducted from the amount paid out to farmer under the policy.

7. Under the crop insurance program, eligible farmers are paid benefits based, in part, on factual representations as to the amount of crop harvested and sold, and the cause of loss.

8. As statutorily mandated, the Secretary of USDA established the Risk Management Agency ("hereinafter referred to as "RMA"), an agency of the USDA, to supervise the FCIC and to administer all programs authorized under the Act. 7 U.S.C. § 6933.

9. By 1986, most crop insurance was sold through private insurance companies contracting with RMA. USDA reimbursed the private insurance companies for any claims paid in connection with crop losses covered by the federal crop insurance program.

10. The private insurance companies contracting with RMA must execute a Standard Reinsurance Agreement. See 7 C.F.R. §400.677.

11. The Standard Reinsurance Agreement requires that all insurance agents and agency employees are properly licensed by the State in which they are doing business.

3

12. USDA maintains a database of all reported and insured flue-cured and burley tobacco growers nationwide.

13. The U.S. Troop Readiness, Veterans' Care, Katrina Recovery, and Iraq Accountability Appropriations Act, 2007 (Pub. L. 110-28), as amended, authorized the Secretary to provide disaster assistance to producers who suffered crop losses because of adverse weather conditions in 2005, 2006, and 2007. Regulations govern the Crop Disaster Program (hereinafter referred to as "CDP"). See 7 C.F.R. § 760 et. seq.

14. The Farm Service Agency (hereinafter referred to as "FSA") administered the 2005-2007 CDP. 7 C.F.R. § 760.801. CDP provided assistance for FCIC insurable crops including flue-cured tobacco. 7 C.F.R. § 760.802. A participant on a farm is eligible for assistance under this section with respect to losses to an insurance commodity if the participant obtained a policy or plan of insurance under the Federal Crop Insurance Act for the crop incurring the losses. 7 C.F.R. § 760.806(a)(1). Where available and determined accurate by FSA, RMA loss records are used for insured crops in evaluating applications for CDP benefits. 7 C.F.R. § 760.812. The 2005, 2006, and 2007, CDP application had to be submitted on a completed FSA-840, or such other form designated for such application by FSA, in the FSA county office in the participant's control county office before the close of business on a specified date. 7 C.F.R. § 760.804(a). The participant applying

4

for benefits under the CDP must certify the accuracy and truthfulness of the information provided in the application as well as any documentation filed with or in support of the application. 7 C.F.R. § 760.804(c).

15. The Commodity Credit Corporation (hereinafter referred to as "CCC") is a government-owned and operated entity within the United States Department of Agriculture. 15 U.S.C. § 714. The purpose of the CCC is to stablize, support and protect farm income and prices.

FACTUAL BACKGROUND

At all times relevant hereto,

15. STEVEN M. HARDWICK maintained residences in both Clarendon, North Carolina, and Nichols, South Carolina.

16. STEVEN M. HARDWICK owned and operated a sole proprietorship which engaged in the business of tree spraying and planting.

17. Between 2004 and 2009, STEVEN M. HARDWICK operated farmland in Claredon, North Carolina, and produced cucumbers and butterbeans. As such, STEVEN M. HARDWICK had an insurable interest in his cucumber and butterbean crops.

18. Between 2007 and 2010, STEVEN M. HARDWICK was not a producer of tobacco, soybeans, peanuts, or corn.

19. Clemons Insurance Agency, Inc. was a North Carolina corporation, established in October 1998, for the purpose of

5

selling insurance, including multi-peril crop insurance policies for, among other crops, tobacco, soybean, corn, and wheat, and in fact, sold crop insurance policies for such agricultural commodities. Clemons Insurance Agency, Inc. also sold crop-hail policies offered by private insurance companies. Clemons Insurance Agency, Inc.'s principal place of business was located in Tabor City, North Carolina. Clemons Insurance Agency, Inc.'s last filed annual report was for 2008, and in March 2010, the State of North Carolina began the administrative dissolution process.

20. Clemons Insurance Association, Inc. was a North Carolina corporation, established in March 2008, for the purpose of selling insurance, including multi-peril crop insurance policies for, among other crops, tobacco, soybean, corn, and wheat, and in fact, sold crop insurance policies for such agricultural commodities. Clemons Insurance Association, Inc. also sold crop-hail policies offered by private insurance companies. Clemons Insurance Associate, Inc.'s principal place of business was located at 99 East Fourth Street, Tabor City, North Carolina.

21. Great American Insurance Company was an Ohio corporation, established in 1872, for the purpose of selling insurance, including eventually multi-peril crop insurance policies for, among other crops, tobacco, soybean, corn, and wheat, and in fact, sold crop insurance policies for such agricultural commodities. Great

6

American Insurance Company's principal place of business was located at 580 Walnut Street, Cincinnati, Ohio.

22. Through Clemons Insurance Agency, STEVEN M. HARDICK declared to Great American Insurance Company, a company that contracted with a federal agency, that: (1) he had 0 acres of tobacco planted in crop year 2006; (2) he had 5 acres of tobacco planted in crop year 2007 in the Eastern District of North Carolina; and (3) he had 48.86 acres of tobacco planted in crop year 2008 in the Eastern District of North Carolina.

23. Through Clemons Insurance Agency, STEVEN M. HARDICK declared to Great American Insurance Group, a company that contracted with a federal agency, that: (1) he had 0 acres of soybeans planted in crop year 2006; (2) he had 283 acres of soybeans planted in crop year 2007 in the Eastern District of North Carolina; and (3) he had 155.7 acres of soybean planted in crop year 2008 in the Eastern District of North Carolina.

24. John Deere Risk Protection, Inc. was the crop insurance managing general agent for John Deere Insurance Company and The Insurance Company of the State of Pennsylvania. John Deere Risk Protection, Inc. sold insurance, including multi-peril crop insurance policies for, among other agricultural crops, tobacco, soybean, corn, and wheat. John Deere Risk Protection, Inc. also sold crop-hail policies offered by private insurance companies.

7

John Deere Risk Protection, Inc. principal place of business was 6400 NW 86th Street, Johnson, Iowa.

25. Bobby McCormick Crop Insurance, LLC was a South Carolina corporation, established in March 2006, for the purpose of selling insurance, including multi-peril crop insurance policies for, among other crops, tobacco, soybean, corn, and wheat, and in fact, sold crop insurance policies for such agricultural commodities. McCormick also sold crop-hail policies offered by private insurance companies. Bobby McCormick Crop Insurance's principal place of business was located at 2329 Highway 348, Loris, South Carolina.

26. Through the Bobby McCormick Crop Insurance agency, STEVEN M. HARDWICK declared to John Deer Risk Protection, Inc., a company that contracted with a federal agency, that he had 17.81 acres of tobacco planted in crop year 2009 in the Eastern District of North Carolina.

27. U.S. Tobacco Cooperative Inc., previously known as Stabilization, was a grower-owned marketing cooperative located in Raleigh, North Carolina. U.S. Tobacco Cooperative Inc. owned and operated a flue-cured tobacco receiving station in Mullins, South Carolina and Clinton, North Carolina -- both known as Stablization Market Center. Stabilzation Market Center received tobacco at the both receiving stations from 2005 through 2009. U.S. Tobacco Cooperative Inc. would enter into "flue-cured tobacco marketing agreements" with the growers. Under the agreements, growers

8

declared that they were bona fide producers of flue-cured tobacco and were required to submit FSA documents to demonstrate their production. By 2010, the flue-cured tobacco marketing agreements required growers to certify that "[t]he tobacco marketed under [the] agreement has been grown only on the farmers identified on the Grower's Form 578 and no other tobacco may be marketed thereunder."

28. Safe Marketing LLC was a South Carolina corporation, established in February 2000, and was a tobacco receiving station for R. J. Reynolds Tobacco Company.

29. R. J. Reynolds Tobacco Company was established in 1875 for the purpose of, among other things, purchasing flue-cured tobacco from sources for processing and production of tobacco products. R.J. Reynolds Tobacco Company was an indirect wholly-owned subsidiary of Reynolds American Inc. R.J. Reynolds Tobacco Company was the second largest tobacco company in the United States.

30. From 2007 through 2010, STEVEN M. HARDWICK worked at Stabilization Market Center in Mullins, South Carolina, as a fork-lift operator and laborer in the shipping department.

31. Rain & Hail LLC (Rain & Hail) was a managing general agency of Ace Property & Casualty Insurance Company of Philadelphia, Pennyslyvania. Rain & Hail, engaged in, among other things, the business of providing crop insurance services to the

9

agriculture community. Rain & Hail contracted with the RMA to provide federally-backed multi-peril crop insurance policies.

32. Rain & Hail contracted with Clemmons Insurance Agency Inc to act as a local independent insurance agent for multi-peril crop insurance policies and private crop hail.

33. John Deere contracted with Bobby McCormick Crop Insurance to act as a local independent insurance agent for multi-peril crop insurance policies.

THE CONSPIRACY

34. Beginning in or about September 2006, the exact date being unknown, and continuing up to and including June 21, 2010, within the Eastern District of North Carolina and elsewhere, STEVEN M. HARDWICK, defendant herein, did combine, conspire, confederate and agree with others both known and unknown to the United States Attorney to commit offenses against the United States, to wit:

a. to knowingly make false statements and reports for the purpose of influencing in any way the action of the FCIC, and companies the FCIC reinsures, upon an application, advance, commitment, loan, insurance agreement, application for insurance and a guarantee, and any change or extension of any of the same, by renewal, deferment of action and otherwise, in violation of Title 18, United States Code, Section 1014;

b. in a matter within the jurisdiction of the Farm Service Agency, an agency within the United States Department of Agriculture, a department of the executive branch of the United States, in connection with the federal crop disaster program, to knowingly and willfully: (i) falsify, conceal, and cover up by any trick, scheme and devise, a material fact; and (ii) make materially false,

10

fictitious, and fraudulent statements and presentations; and (iii) make and use any false writing and document knowing the same to contain materially false, fictitious, and fraudulent statements, in violation of Title 18, United States Code, Section 1001;

c.   having devised and intending to devise any scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme or artifice and attempting to do so, to place in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, and to knowingly cause to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, in violation of Title 18, United States Code, Section 1341; and

d.   having devised and intending to devise any scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, or promises, to transmit and cause to be transmitted by means of wire in interstate commerce, that is, by electronic mail and facsimile, writings, signals and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

34.  It was the purposes of the conspiracy: (1) to profit through the filing of false and fictitious crop insurance and crop disaster claims, and the sale of "hidden" tobacco; (2) to hide ownership of tobacco through the use of nominee farmers; (3) to hide the criminal proceeds through payments in nominee names; (4) to provide false information to the Farm Service Agency in

11

administrative proceedings; and (5) to hide assets from the bankruptcy court.

MANNER AND MEANS

36. In furtherance of the conspiracy, STEVEN M. HARDWICK, defendant herein, along with others, employed the following manner and means:

a. An unindicted co-conspiring farmer (hereinafter referred to Farmer A) developed the scheme to defraud the FCIC by securing crop insurance in other persons' names, securing a power of attorney over the insurance matters, securing an assignment of the indemnity, selling the crops harvested through false or fictitious contracts, and then filing false indemnity claims under those person names. Farmer A was a resident of Columbus County, North Carolina.

b. Farmer A solicited other co-conspirators, including STEVEN M. HARDWICK, to act as nominee farmers and obtained and caused to be obtained federal crop insurance policies in their own names for certain crops, including tobacco, soybeans, and peanuts. Some of these "nominee farmers" did not engage in any farming operations, and did not have an insurable interest in the crops.

c. STEVEN M. HARDWICK and the others executed applications for crop insurance for tobacco, soybeans, and peanuts, falsely declaring the crop to be their own. In fact, Farmer A was

12

the producer of all of the crops and the only person with an insurable interest in those crops.

      d.    Farmer A and/or STEVEN M. HARDWICK secured the identifying information for various persons in the community.

      e.    Farmer A and/or STEVEN M. HARDWICK thereafter executed contracts with tobacco companies such as U.S. Tobacco Cooperative using the stolen names and identifying information.

      f.    STEVEN M. HARDICK and other co-conspirators secured flue-cured tobacco marketing agreements with U.S. Tobacco Cooperative in their own names even though they were not the bona fide producer of the crop.

      g.    Farmer A sold his tobacco and other crops on contracts written in the names of other co-conspirators or unknowing victims of the offense conduct who were either no longer engaged in farming operations or never had engaged in farming tobacco or other crops.

      h.    Farmer A profited under the scheme because he was paid twice for each pound of tobacco: once through the false crop insurance claim, and also through the sale of the "hidden" tobacco. Farmer A further profited under the scheme because he failed to disclose the income to the federal bankruptcy court in connection with his request for relief.

13

i. STEVEN M. HARDWICK and other co-conspirators profited under the scheme because they were paid for the use of their names on the contracts.

j. The conspirators took the checks from U.S. Tobacco Cooperative made payable to "Steve Hardwick," endorsed the checks, and thereafter deposited the checks into Farmer A's bank account at Horry County State Bank in Loris, South Carolina.

k. In 2009, STEVEN M. HARWICK agreed to sell "hidden tobacco" on behalf of two other unindicted co-conspirators (hereinafter referred to Farmer B and Farmer C). Farmer C was, in fact, not a farmer. Rather, Farmer C pretended to be a farmer but in reality, was allowing another producer to use his (Farmer C's) name on a contract in order to sell "hidden tobacco."

l. With respect to tobacco sold on Farmer B and Farmer C's contract, the checks from Stabilization Market Center made payable to "Steve Hardwick" were endorsed and either cashed or deposited by the conspirators.

m. STEVEN M. HARDWICK, other co-conspirators, and Farmer A, who sold the hidden tobacco through HARDWICK at Stablization Market Center, misrepresented the truth of farm operations in a variety of documents that were submitted to the private insurance entities. For example, documents, including applications, reports of actual production history, acreage reports, and claim forms made and submitted in support of crop

14

insurance coverage and claims, failed to truthfully show who had an insurable interest and who really suffered a loss and the extent of that loss.

n. With both the multi-peril crop insurance claims and the crop-hail claims, a co-conspirator would either mail or caused to be mailed, through the U.S. mails, the claim forms, or would submit the claim forms by electronic mail.

o. As a result of the claims, insurance companies issued indemnity checks payable to STEVEN M. HARDWICK. The insurance company and/or insurance agency would be reimbursed for the payments by USDA.

p. The indemnity checks were endorsed and deposited into Farmer A's bank account at Horry County State Bank in Loris, South Carolina.

q. STEVEN M. HARDWICK, Farmer A, and other others submitted and caused to be submitted false statements in connection with a FSA crop disaster payment review.

r. To further conceal the conspiracy, STEVEN M. HARDWICK falsely declared the income from the tobacco sales on his tax returns, and provided a fraudulent 1099 to Farmers A, B, and C, by describing the payments as an "expense." By so doing, STEVEN M. HARDWICK further concealed the true producer of the crops.

s. Farmer A concealed the income from the sale of hidden crops, payments by USDA Commodity Credit Corp, and federal

15

crop disaster payments from the United States Bankruptcy Court for the Eastern District of North Carolina.

OVERT ACTS

37. In furtherance of the conspiracy, and to effect the object thereof, there were committed by at least one of the co-conspirators in the Eastern District of North Carolina at least one of the following overt acts, among others:

CROP INSURANCE YEAR 2006

a. On or about the following dates, STEVEN M. HARDWICK sold $55,818.38 worth of tobacco through Stablization Market Center in Mullins, South Carolina:

| Date of Sale | Pounds of Tobacco Sold |
|---|---|
| 09/15/2006 | 13,746 |
| 09/15/2006 | 12,912 |
| 09/15/2006 | 1,342 |
| 09/22/2006 | 8,423 |
| 09/22/2006 | 623 |

b. On the following dates, STEVEN M. HARDWICK endorsed the check from Stablization Market Center, gave the check to the co-conspiring Farmer A who, in turn, negotiated and deposited the check into his (Farmer A's) account at Horry County State Bank, in Loris, South Carolina, on the following dates and more fully described below:

16

| Deposit Date | Payor | Check Date | Check No. | Payee | Amount |
|---|---|---|---|---|---|
| 9/18/2006 | Stablization Market Center - Mullins | 9/15/2006 | 3650410396 | Steve Hardwick | $19,083.71 |
| 9/18/2006 | Stablization Market Center - Mullins | 9/15/2006 | 3650410398 | Steve Hardwick | $21,434.88 |
| 9/18/2006 | Stablization Market Center - Mullins | 9/15/2006 | 3650410400 | Steve Hardwick | $1,230.62 |
| | | | | | |
| 9/20/2006 | Stablization Market Center - Mullins | 9/20/2006 | 3650410502 | Steve Hardwick | $13,198.84 |

## CROP INSURANCE YEAR 2007

c.   On January 24, 2007, a conspirator signed an application/cancellation and transfer form for federal multi-peril crop insurance requesting insurance for soybean and tobacco crops located in Columbus County, North Carolina. The application purported to be in the name of "Steven M. Hardwick." The application was submitted through the Clemons Insurance Agency. The policy was insured by Great American Insurance Company.

d.   On June 30, 2007, a conspirator, on behalf of the STEVEN M. HARDWICK contract, executed an acreage reporting form for 2007, declaring that STEVEN M. HARDWICK had planted 283 acres of soybeans and 5 acres of tobacco.

e.   On August 8, 2007, Great American Insurance Company received the acreage reporting form by and through the U.S. mails.

17

f.   On or about the following dates, STEVEN M. HARDWICK sold $399,263.81 worth of tobacco through Stablization Market Center in Mullins, South Carolina:

| Date of Sale | Pounds of Tobacco Sold |
|---|---|
| 08/01/2007 | 12869 |
| 08/01/2007 | 1472 |
| 08/06/2007 | 2303 |
| 08/09/2007 | 6011 |
| 08/13/2007 | 2059 |
| 08/13/2007 | 3283 |
| 08/13/2007 | 2353 |
| 08/15/2007 | 6439 |
| 08/22/2007 | 12103 |
| 08/22/2007 | 12127 |
| 08/22/2007 | 4489 |
| 08/23/2007 | 11656 |
| 08/23/2007 | 11372 |
| 08/23/2007 | 701 |
| 08/23/2007 | 6912 |
| 08/23/2007 | 12600 |
| 08/23/2007 | 8925 |
| 08/23/2007 | 3903 |
| 08/28/2007 | 11570 |
| 08/28/2007 | 9203 |
| 08/28/2007 | 12291 |
| 08/28/2007 | 1434 |
| 08/28/2007 | 6339 |

18

| | |
|---|---|
| 09/05/2007 | 12125 |
| 09/05/2007 | 1878 |
| 09/06/2007 | 13344 |
| 09/06/2007 | 2811 |
| 09/10/2007 | 14549 |
| 09/10/2007 | 14804 |
| 09/10/2007 | 2865 |
| 09/12/2007 | 5453 |
| 09/17/2007 | 12761 |
| 09/17/2007 | 4270 |
| 09/18/2007 | 12251 |
| 11/08/2007 | 2357 |
| 11/08/2007 | 2724 |

g.    The checks made payable to "Steve Hardwick" and paid
by Stablization Market Center for tobacco delivered, were endorsed
and deposited into Farmer A's account at Horry County State Bank,
in Loris, South Carolina on the following dates and more fully
described below:

| Deposit Date | Payor | Check Date | Check No. | Payee | Amount |
|---|---|---|---|---|---|
| 8/1/2007 | Stablization Market Center - Mullins | 8/1/2007 | 3650408918 | Steve Hardwick | $14,117.29 |
| 8/1/2007 | Stablization Market Center - Mullins | 8/1/2007 | 3650408920 | Steve Hardwick | $1,614.79 |
| 8/10/2007 | Stablization Market Center - Mullins | 8/9/2007 | 3650409114 | Steve Hardwick | $8,397.37 |
| 8/14/2007 | Stablization Market Center - Mullins | 8/13/2007 | 3650409136 | Steve Hardwick | $3,213.55 |

19

| | | | | | |
|---|---|---|---|---|---|
| 8/14/2007 | Stablization Market Center - Mullins | 8/13/2007 | 3650409140 | Steve Hardwick | $4,929.63 |
| 8/14/2007 | Stablization Market Center - Mullins | 8/13/2007 | 3650409182 | Steve Hardwick | $2,046.79 |
| | | | | | |
| 8/16/2007 | Stablization Market Center - Mullins | 8/15/2007 | 3650409230 | Steve Hardwick | $8,827.98 |
| | | | | | |
| 8/23/2007 | Stablization Market Center - Mullins | 8/22/2007 | 3650409476 | Steve Hardwick | $17,048.99 |
| 8/23/2007 | Stablization Market Center - Mullins | 8/22/2007 | 3650409478 | Steve Hardwick | $18,609.13 |
| 8/23/2007 | Stablization Market Center - Mullins | 8/22/2007 | 3650409480 | Steve Hardwick | $7,158.36 |
| | | | | | |
| 8/24/2007 | Stablization Market Center - Mullins | 8/23/2007 | 3650409554 | Steve Hardwick | $20,321.72 |
| 8/24/2007 | Stablization Market Center - Mullins | 8/23/2007 | 3650409556 | Steve Hardwick | $11,245.83 |
| 8/24/2007 | Stablization Market Center - Mullins | 8/23/2007 | 3650409558 | Steve Hardwick | $1,014.35 |
| 8/24/2007 | Stablization Market Center - Mullins | 8/23/2007 | 3650409560 | Steve Hardwick | $18,469.58 |
| 8/24/2007 | Stablization Market Center - Mullins | 8/23/2007 | 3650409562 | Steve Hardwick | $16,674.43 |
| 8/24/2007 | Stablization Market Center - Mullins | 8/23/2007 | 3650409582 | Steve Hardwick | $4,721.79 |
| 8/24/2007 | Stablization Market Center - Mullins | 8/23/2007 | 3650409584 | Steve Hardwick | $13,699.87 |
| | | | | | |
| 8/29/2007 | Stablization Market Center - Mullins | 8/28/2007 | 3650409674 | Steve Hardwick | $19,146.90 |

20

| | | | | | |
|---|---|---|---|---|---|
| 8/29/2007 | Stablization Market Center - Mullins | 8/28/2007 | 3650409676 | Steve Hardwick | $15,154.90 |
| 8/29/2007 | Stablization Market Center - Mullins | 8/28/2007 | 3650409678 | Steve Hardwick | $20,456.10 |
| 8/29/2007 | Stablization Market Center - Mullins | 8/28/2007 | 3650409680 | Steve Hardwick | $2,398.64 |
| 9/5/2007 | Stablization Market Center - Mullins | 9/5/2007 | 3650410005 | Steve Hardwick | $10,521.68 |
| 9/5/2007 | Stablization Market Center - Mullins | 9/5/2007 | 3650410015 | Steve Hardwick | $15,057.49 |
| 9/5/2007 | Stablization Market Center - Mullins | 9/5/2007 | 3650410017 | Steve Hardwick | $2,502.39 |
| 9/7/2007 | Stablization Market Center - Mullins | 9/6/2007 | 3650410241 | Steve Hardwick | $21,565.18 |
| 9/7/2007 | Stablization Market Center - Mullins | 9/6/2007 | 3650410243 | Steve Hardwick | $4,573.50 |
| 9/10/2007 | Stablization Market Center - Mullins | 9/10/2007 | 3650410275 | Steve Hardwick | $23,721.16 |
| 9/10/2007 | Stablization Market Center - Mullins | 9/10/2007 | 3650410277 | Steve Hardwick | $24,030.42 |
| 9/10/2007 | Stablization Market Center - Mullins | 9/10/2007 | 3650410279 | Steve Hardwick | $4,661.35 |
| 9/19/2007 | Stablization Market Center - Mullins | 9/17/2007 | 3650410563 | Steve Hardwick | $20,166.30 |
| 9/19/2007 | Stablization Market Center - Mullins | 9/17/2007 | 3650410565 | Steve Hardwick | $6,733.79 |
| 9/19/2007 | Stablization Market Center - Mullins | 9/18/2007 | 3650410665 | Steve Hardwick | $19,762.67 |

21

h. On or about September 24, 2007, STEVEN M. HARDWICK sold $38,880.35 worth of tobacco to Safe Marketing, LLC.

i. On or about September 24, 2007, the check made payable to "Steve Hardwick" and issued by Safe Marketing LLC for the tobacco delivered was endorsed and deposited into Farmer A's account at Horry County State Bank, in Loris, South Carolina.

j. On or about September 25, 2007, STEVEN M. HARDWICK sold $48,614.76 worth of tobacco to Safe Marketing, LLC.

k. On or about September 26, 2007, the check made payable to "Steve Hardwick" and issued by Safe Marketing LLC for the tobacco delivered was endorsed and deposited into Farmer A's account at Horry County State Bank, in Loris, South Carolina.

l. On December 3, 2007, the conspirators submitted and caused to be submitted an indemnity claim for the soybean crops covered by the STEVEN M. HARDWICK multi-peril crop insurance agreement.

m. On or about December 12, 2007, Great American Insurance Company caused to be mailed an indemnity check (less premiums) in the amount of $16,323.00, payable to "Steve Hardwick," in connection with the soybean claim. The total indemnity payment was $25,119.

n. On or about December 31, 2007, the soybean-related indemnity check issued to STEVEN M. HARDWICK by Great American

22

Insurance Company was deposited into the bank account of Farmer A at Horry County State Bank.

## CROP INSURANCE YEAR 2008

o. On or about January 22, 2008, a co-conspirator certified four applications for federal crop disaster payments.

p. On or about March 6, 2008, STEVEN M. HARDWICK caused to be issued a $10,900.00 payment from the federal crop disaster program for the 2007 soybean crop. STEVEN M. HARDWICK endorsed the check which was subsequently deposited into Farmer A's bank account.

q. On April 1, 2008, a co-conspirator certified that STEVEN M. HARDWICK had grown a total of 8,750 lbs of tobacco on his 5 acres in crop year 2007.

r. On or about May 27, 2008, a co-conspirator applied for and received private crop hail and wind insurance from Rain and Hail, LLC in the name of STEVEN M. HARDWICK. In the application, the co-conspirator sought coverage for a total of 35 acres of tobacco in Columbus County, North Carolina.

s. On June 18, 2008, a co-conspirator executed an acreage reporting form for 2008, declaring that STEVEN M. HARDWICK had planted 155.7 acres of soybeans and 48.86 acres of tobacco.

t. On or about June 25, 2008, STEVEN M. HARDWICK executed an MPCI Notice of Loss in connection with the 2008 tobacco crop.

23

u. On or about July 30, 2008, a co-conspirator submitted and caused to be submitted a crop-hail proof of loss in the amount of $3,991 in the name of STEVEN M. HARDWICK.

v. On or about August 8, 2008, STEVEN M. HARDWICK caused to be issued a premium credit of $3,991.00 in connection with a private hail claim.

w. On or about the following dates, STEVEN M. HARDWICK sold $73,399.96 worth of tobacco through Stablization Market Center in Mullins, South Carolina:

| Date of Sale | Pounds of Tobacco Sold |
|---|---|
| 8/5/2008 | 3715 |
| 8/7/2008 | 1419 |
| 8/11/2008 | 625 |
| 9/16/2008 | 730 |
| 9/22/2008 | 659 |
| 9/25/2008 | 1491 |
| 9/25/2008 | 2330 |
| 9/25/2008 | 1495 |
| 10/2/2008 | 3802 |
| 10/9/2008 | 4268 |
| 10/9/2008 | 784 |
| 10/16/2008 | 1398 |
| 10/21/2008 | 1533 |
| 10/23/2008 | 2902 |
| 10/23/2008 | 3696 |
| 10/23/2008 | 581 |
| 10/27/2008 | 3815 |
| 10/27/2008 | 3688 |
| 10/27/2008 | 4445 |
| 10/27/2008 | 2617 |
| 10/27/2008 | 1430 |
| 10/31/2008 | 1395 |
| 10/31/2008 | 686 |

24

x.    STEVEN M. HARDWICK endorsed 12 of the checks made payable to him and paid by Stablization Market Center for tobacco delivered.    These checks were either cashed or deposited into a bank account.

y.    Two of the checks made payable to "Steve Hardwick" and issued by Stablization Market Center for tobacco delivered, were endorsed and deposited the check into Farmer A's account at Horry County State Bank, in Loris, South Carolina on the following dates and more fully described below:

| Deposit Date | Payor | Check Date | Check No. | Payee | Amount |
|---|---|---|---|---|---|
| 08/07/2008 | Stablization Market Center - Mullins | 08/07/2008 | 3650409065 | Steve Hardwick | $2,166.81 |
| 09/18/2008 | Stablization Market Center - Mullins | 09/16/2008 | 3650410546 | Steve Hardwick | $946.81 |

z.    On or about October 7, 2008, the conspirators caused seven checks payable to "Steve Hardwick" to be issued by USDA Commodity Credit Corporation in the following amounts: $175.00, $491.00, $180.00, $260.00, $523.00, $137.00, and $281.00.

aa.    On October 11, 2008, STEVEN M. HARDWICK submitted and caused to be submitted an indemnity claim for the tobacco crops.

bb.    On    October    24,    2008,    co-conspiring    Farmer    A deposited and caused to be deposited the seven checks payable to "Steve Hardwick" and issued by USDA Commodity Credit Corporation into his (Farmer A's) bank account at Horry County State Bank.

cc. On or about October 28, 2008, Great American Insurance Company caused to be mailed an indemnity check (less premiums) in the amount of $96,575, payable to "Steve Hardwick," in connection with the tobacco claim. The total indemnity payment was $110,035.

dd. On or about October 31, 2008, Farmer A deposited or caused to be deposited the Great American Insurance Company tobacco indemnity check payable to "Steve Hardwick," into his (Farmer A's) bank account at Horry County State Bank.

ee. On January 1, 2009, Farmer A submitted and caused to be submitted an indemnity claim for the soybean crops insured in the name of STEVEN M. HARDWICK.

ff. On or about January 13, 2009, Great American Insurance Company caused to be mailed an indemnity check in the amount of $17,144, payable to "Steve Hardwick," in connection with the soybean claim. The total indemnity payment was $17,144.

gg. On or about January 20, 2009, Farmer A deposited or caused to be deposited the Great American Insurance Company soybean indemnity check payable to "Steve Hardwick," into his (Farmer A's) bank account at Horry County State Bank.

### 2009 CROP INSURANCE YEAR

hh. On January 5, 2009, a co-conspirator caused the insurance policy in the name of STEVEN M. HARDWICK to be transferred from Great American Insurance Company to John Deere Risk Protection Agency, through the Bobby McCormick Crop Insurance agency.

ii. On or about January 5, 2009, in Tabor City, North Carolina, a power of attorney for STEVEN M. HARDWICK was executed, appointing Farmer A to "take all action related to crop insurance coverage" in connection with the John Deere Risk Protection Agency crop insurance policy.

jj. On or about January 5, 2009, in Tabor City, North Carolina, an application of assignment of indemnity for any insurance proceeds for the STEVEN M. HARDWICK policy was executed, assigning to Farmer A "the right and interest of any indemnity payments which may be payable to the insured under the insurance policy."

kk. On or about the following dates, STEVEN M. HARDWICK sold $222,882.20 worth of tobacco through Stablization Market Center in Mullins, South Carolina:

| Date of Sale | Pounds of Tobacco Sold |
|---|---|
| 08/04/2009 | 3794 |
| 08/04/2009 | 3135 |
| 08/04/2009 | 3088 |
| 08/04/2009 | 3853 |
| 08/06/2009 | 3628 |
| 08/10/2009 | 2359 |
| 08/11/2009 | 9063 |
| 08/13/2009 | 9996 |
| 08/13/2009 | 3493 |
| 08/13/2009 | 2637 |
| 08/20/2009 | 2662 |
| 08/24/2009 | 2226 |
| 08/24/2009 | 2958 |
| 08/26/2009 | 1317 |
| 08/27/2009 | 2973 |
| 08/31/2009 | 2790 |
| 08/31/2009 | 746 |

| | |
|---|---|
| 08/31/2009 | 723 |
| 09/01/2009 | 2586 |
| 09/01/2009 | 3433 |
| 09/02/2009 | 2141 |
| 09/02/2009 | 2622 |
| 09/02/2009 | 689 |
| 09/02/2009 | 664 |
| 09/03/2009 | 4291 |
| 09/03/2009 | 5228 |
| 09/03/2009 | 3582 |
| 09/03/2009 | 1478 |
| 09/14/2009 | 3697 |
| 09/16/2009 | 1263 |
| 09/22/2009 | 9532 |
| 09/22/2009 | 558 |
| 09/29/2009 | 3323 |
| 09/29/2009 | 3101 |
| 09/30/2009 | 641 |
| 10/06/2009 | 3959 |
| 10/12/2009 | 789 |
| 10/15/2009 | 2105 |
| 10/21/2009 | 2894 |
| 10/21/2009 | 1338 |
| 10/21/2009 | 3100 |
| 10/21/2009 | 1601 |
| 10/21/2009 | 3202 |

11. On or about October 27, 2009, in two separate sales, STEVEN M. HARDWICK sold $3,697.74 worth of tobacco (749 pounds and 1342 pounds respectively) through Stablization Market Center in Clinton, North Carolina.

## STATEMENTS MADE DURING 2009-2010 AGENCY REVIEW

mm. On or about November 9, 2009, STEVEN M. HARDWICK orally declared to USDA, through the Columbus County FSA committee and staff, in connection with an agency review that the following crops did not belong to him:

| Crop Year | Crop for which STEVEN M. HARDWICK had been alleged to be the producer | Number of Acres claimed to be produced |
|---|---|---|
| 2007 | wheat | 88.94 |
| 2007 | tobacco | 5.0 |
| 2007 | soybeans | 300.92 |
| 2008 | tobacco | 48.86 |
| 2008 | soybeans | 155.7 |
| 2009 | tobacco | 17.81 |

nn. On or about November 9, 2009, STEVEN M. HARDWICK declared to FSA in connection with an agency review that he did not execute FSA Form CCC-36, assigning payment to Farmer A.

oo. In early January, the exact date unknown, Farmer A provided a typed-written letter to STEVEN M. HARDWICK.

pp. On or about January 12, 2010, STEVEN M. HARDWICK provided the letter to FSA. In the letter, he retracted his previous statement and claimed that: (1) he did have 17.81 acres of tobacco in Crop Year 2009; and (2) he did sign the FSA Form CCC-36, assigning payment to Farmer A. STEVEN M. HARDWICK knew that the statements in the letter were false.

qq. On or about March 8, 2010, STEVEN M. HARDWICK told employees with FSA that he and Farmer A were equal owners of the 2009 tobacco (17.81 acres). STEVEN M. HARDWICK knew that the statement was false.

rr.  On or about June 21, 2010, in connection with federal bankruptcy proceedings, Farmer A failed to disclose income obtained through the sale of hidden tobacco.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
*(False Statements in Connection with*
*Federal Crop Insurance Program &*
*aiding and abetting the same)*

1.  Paragraphs 1 through 33, and 36-37 of Count One above are re-alleged and incorporated herein by reference.

2.  On or about October 11, 2008, within the Eastern District of North Carolina and elsewhere, STEVEN M. HARDWICK, defendant herein, did knowingly make false statements and reports for the purpose of influencing in any way the action of the FCIC, and companies the FCIC reinsures, upon an application, advance, commitment, loan, insurance agreement, application for insurance and a guarantee, and any change or extension of any of the same, by renewal, deferment of action and otherwise, to wit: STEVEN M. HARDWICK caused to be submitted a claim for indemnity for tobacco crop for which he had no insurable interest and in which he failed to report tobacco sales to Stabilization Market Center in his name, and did aid and abet others in so doing, all in violation of Title 18, United States Code, Sections 1014 and 2.

THOMAS G. WALKER
United States Attorney

By: BANUMATHI RANGARAJAN
Assistant United States Attorney
Criminal Division